# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CRIMINAL ACTION NO. 5:15-CR-00018-KDB-DSC-1

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**THEODORE ANTONIO FERGUSON,**<br><br>**Defendant.** | **ORDER** |

**THIS MATTER** is before the Court on Defendant Theodore Antonio Ferguson's *pro se* Motion for Compassionate Release and Reduction in Sentence and Home Confinement pursuant to 18 U.S.C. § 3582(c)(1)(A), the First Step Act of 2018, the Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020, and the Second Chance Act of 2007 which was reauthorized by Section 603 of the First Step Act of 2018. (Doc. No. 22). The Government opposes the motion. The Defendant also requests appointment of counsel to assist in this current motion for compassionate release before the Court. (Doc. No. 23). For the reasons explained below, the Court will deny Defendant's motions.

## I. BACKGROUND

On April 17, 2010, Defendant pled guilty to conspiring to distribute and possess with the intent to distribute a mixture and substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), 841(a)(1). (Doc. No. 11, Presentence Report ¶¶ 1-2). From in or about 2006 through in or about 2013, Defendant conspired with others to distribute and possess with the intent to distribute cocaine base. *Id.* at ¶ 5. During the course of the investigation, officers made controlled purchases of crack cocaine from Defendant on numerous occasions. *Id.* at ¶ 6.

1

The Presentence Report details more than two dozen instances of the possession, purchase, or sale of crack cocaine. *Id.* at ¶¶ 5-11. In total, the amount of crack cocaine that was known to or reasonably foreseeable by Defendant was at least 8,400 grams, specifically 10,900 grams. *Id.* at ¶¶ 12-13. He was sentenced to 125 months imprisonment plus five years of supervised release. (Doc. No. 17).

Defendant is a 52-year-old male confined at FMC Lexington, a federal prison for inmates requiring medical or mental health care in Kentucky, with a projected release date of February 21, 2024. Defendant states that he suffers from blood clots and has been placed on blood thinners and has deep vein thrombosis (DVT) since 2003. According to his Presentence Report, he has had circulation issues including blood clots since 2003 for which he takes Coumadin and Tramadol, and in May 2015 was evaluated for his history of DVT for which he takes Warfarin. (Doc. No. 11, ¶¶ 102-103). Defendant did attach some medical records to his motion which indicate that he does take blood thinners and has DVT. (Doc. No. 22, Exhibit 1).

On or about May 1, 2020, Defendant was diagnosed with COVID-19 and placed in isolation. (Doc. No. 27, Exhibit 1, Medical Records, at 60). When diagnosed, Defendant was asymptomatic other than one instance of reporting chills, fatigue and a dry cough, and his medical records indicate that he did not report any other substantial symptoms or respiratory concerns at any other time during the course of his treatment. *See Id.* at 43-61. In or about mid-May, Defendant tested negative for COVID-19, clearing him to be removed from isolation. *Id.* at 43.

FMC Lexington currently has one inmate and zero staff COVID-19 cases. There have been 8 inmate deaths and 212 inmates and 13 staff have recovered. *See* Federal Bureau of Prisons, *COVID-19 Cases,* at https://www.bop.gov/coronavirus/ (last accessed on 9/2/2020).

2

On April 27, 2020, Defendant submitted a compassionate release request to BOP based on his concerns about the risk of contracting COVID-19 (Doc. No. 26, Exhibit 2, at 2). On May 28, 2020, the warden denied the request because Defendant "did not satisfy the medical components as specified in the program statement." (Doc. No. 26, Exhibit 3, at 2). On June 30, 2020, Defendant filed a motion for compassionate release based on 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 20). On June 30, 2020, this Court denied the motion, without prejudice, because Defendant did not support his motion with evidence and had not shown that he had exhausted his administrative remedies. (Doc. No. 21). After being diagnosed with COVID-19, treated, and released from COVID-19 isolation, on July 13, 2020, Defendant filed a motion with this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on his health concerns and the number of positive cases at FMC Lexington. (Doc. No. 22). He asks the Court to reduce his sentence to time served or a term of home confinement. *Id.* The Government filed a response in opposition on September 1, 2020 (Doc. No. 26) and filed a copy of Defendant's medical records under seal. (Doc. No. 27).

## II. LEGAL STANDARD

By statute, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of the exceptions to this general rule is a motion for compassionate release. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.**—The Court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,

3

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction
> >
> > . . .
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). A defendant seeking compassionate release has the burden of establishing that such relief is warranted. *See, e.g.*, *United States v. Ebbers*, -- F. Supp. 3d --, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

The United States Sentencing Guidelines do not specifically contain a policy statement addressing motions for reductions in terms of imprisonment that are filed by an inmate. However, U.S.S.G. § 1B1.13 ("the Policy Statement") addresses motions for reductions in terms of imprisonment that are filed by the Director of the Bureau of Prisons (BOP). The Policy Statement largely mirrors the language of 18 U.S.C. § 3582(c)(1)(A) but includes a directive that the court determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). In determining whether a defendant is a danger to the safety of any other person or to the community, the Court must consider the following statutory factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the [defendant];
>
> (3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

If the Court finds the defendant is not a danger to the safety of any other person or the community, the Policy Statement directs the Court to consider a variety of circumstances in determining whether extraordinary and compelling reasons justify a sentence reduction. U.S.S.G. § 1B1.13(2) App. Note 1. Specifically, the Court should consider whether any of the following circumstances exist: (1) "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" although a specific prognosis of life expectancy is not required; (2) the defendant is: "suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (3) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; (4) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children"; (5) "[t]he incapacitation of the defendant's spouse or registered partner"; or (6) "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and

5

compelling reason other than, or in combination with, the reasons" set forth in the prior factors. *Id.*

While courts agree that the Policy Statement and Application Notes set forth above apply to motions filed by the Director of the BOP, courts differ on whether the Policy Statement is binding on motions filed by the inmate. *See, e.g.*, *United States v.* Lynn, No. 89-0071-WS, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019) (binding); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) (not binding). "The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants." *Beck*, 425 F. Supp. 3d at 579. Accordingly, the majority of courts do not find the Policy Statement binding. Even so, the courts that find that the Policy Statement does not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction still look to the old policy statement as it provides helpful guidance.

### III. DISCUSSION

*A. Exhaustion of Administrative Remedies*

A prisoner may bring a motion for compassionate release before the court only if he "has fully exhausted all administrative rights to appeal a failure" of the BOP to bring a motion on his behalf or if 30 days have passed since the warden received his request, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Defendant argues that he has satisfied the exhaustion requirement because he submitted a request for a reduction in sentence to the warden of his facility and was denied. (Doc. No. 22, at 1). Although unclear whether Defendant has fully exhausted his remedies under the compassionate release statute, the Government does not argue that Defendant's motion should be denied for failure to exhaust his administrative remedies. Because the Government did not raise

6

Case 5:15-cr-00018-KDB-DSC   Document 29   Filed 09/04/20   Page 6 of 11

the issue of exhaustion, the Court deems that it has waived the defense. Accordingly, the Court will proceed to address the merits of Defendant's motion.

B. *Policy Statements*

Despite the lack of a policy statement clearly applicable to motions for compassionate release filed by defendants, the Court is guided by the general precepts of the Policy Statement in U.S.S.G. § 1B1.13. The Court finds it is not restrained by the Policy Statement in U.S.S.G. § 1B1.13 and is free to consider the COVID-19 pandemic, combined with other relevant circumstances, regardless of whether it falls within one of the existing categories in the U.S.S.G. § 1B1.13 commentary. A discussion of the 3553(a) factors below will adequately address concerns outlined in the Policy Statement.

C. *Extraordinary and Compelling Reasons*

Defendant asserts that he suffers from medical conditions that make him particularly susceptible to complications from COVID-19. A review of his medical records from the last two years shows that while Defendant has a blood disorder and a history of DVT,[1] these conditions are managed with medication and compression socks. FMC Lexington has also consulted with, and Defendant has been seen by, a vascular surgeon. *See* Doc. No. 27, Exhibit 1, at 11, 38, 63, 67, 172, 184, 191. Defendant also has a recent diagnosis of secondary hypertension but his medical records note that it "needs to be re-confirmed over time, may be secondary to pain or recent covid infection." *Id.* at 115. While Defendant's medical conditions are significant, there is no evidence that any of them "substantially diminish the ability of Defendant to provide self-care within the

---

[1] Neither the specific blood disorder nor DVT are listed on the CDC's list of underlying medical conditions that increase the risk for severe illness. https://www.cdc.gov/coronavirus/2019-conditions.html?CDC_AA_refVal=https%3A%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed on 8/31/2020).

environment of a correctional facility and from which he or she is not expected to recover," as required under the policy statement.

On or about May 1, 2020, Defendant was diagnosed with COVID-19 and placed in isolation. *Id.* at 60. When diagnosed, Defendant was asymptomatic other than one instance of reporting chills, fatigue and a dry cough, and his medical records indicate that he did not report any other substantial symptoms or respiratory concerns at any other time during the course of his treatment. *See Id*. at 43-61. In or about mid-May, Defendant tested negative for COVID-19, clearing him to be removed from isolation. *Id*. at 43. After recovering from COVID-19, in mid-June Defendant complained of intermittent headaches and was diagnosed with a sinus infection and put on medication with no benefit. While the medical records indicate that he has a history of migraines as a child, the doctor acknowledges that COVID-19 could be contributing to headaches. Defendant is being treated for the headaches with medication. *Id.* at 16-27. His medical ailments are well-controlled and do not present any impediment to his ability to provide self-care in the institution. The Government argues, and this Court agrees, that recovery from a positive COVID-19 diagnosis, particularly where the inmate suffered only minor symptoms, does not qualify as an extraordinary circumstance under the relevant policy statement, even if Defendant has COVID-19 risk factors.

Although there is no current medical consensus regarding the risk of COVID-19 reinfection, courts across the country have held that inmates with COVID-19 risk factors who have recovered from COVID-19 cannot, without more, establish extraordinary circumstances warranting release. *See, e.g., United States v. Shahbazpour,* 2020 WL 3791633, at \*2 (N.D. Cal. July 7, 2020) (relief denied for defendant with recent series of staph, MRSA, and upper respiratory infections who had fully recovered from COVID-19, stating that "the immediate threat to [defendant] has passed with no serious long-term complications for him"); *United States v. Pinkston,* 2020 WL 3492035 (S.D.

8

Ga. June 26,2020) (stating, regarding 70-year-old inmate who tested positive for COVID-19 in prison, that "[defendant's] health was not sufficiently compromised by COVID-19 to qualify as a serious medical condition"); *United States v. Zahn,* 2020 WL 3035795, at *2 (N.D. Cal. June 6, 2020) ("[T]he immediate threat to [defendant] has passed, fortunately with no serious complications of any kind. That is enough to find that he has not proffered an extraordinary and compelling reason for release under 18 U.S.C. § 3582(c)(1)(A)(i).").[2]

The fact that the medical staff at FMC Lexington were able to successfully treat Defendant for COVID-19, despite his DVT and blood disorder, serves as the best evidence that they are well-suited to treat him again even if it is possible that he could get re-infected. The primary basis of his motion is to avoid the risk of a virus that he has already faced and beaten.

The Court finds that Defendant has not established "extraordinary and compelling" reasons for a sentence reduction under § 3582(c)(1)(A).

## IV. CARES ACT

In response to the COVID-19 pandemic, the President signed the CARES Act into law on March 27, 2020. Pub. L. 116-136, 134 Stat 281, 516. Section 12003(b)(2) of the Act gives the Director of the BOP authority to lengthen the maximum amount of time a prisoner may be placed in home confinement under 18 U.S.C. § 3624(c)(2) during the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP. On April 3, 2020, the Attorney General issued a memorandum to the Director of the BOP making that finding and directing the immediate processing of suitable candidates for home confinement. However, nothing in the CARES Act gives the Court a role in determining those

---

[2] *Accord United States v. Frost,* 2020 WL 3869294, at *4 (D.S.D. July 9, 2020); *United States v. Kim,* 2020 WL3213312 (D. Haw. June 15, 2020); *United States v. Curtiss,* 2020 WL 3146506, at *2 (W.D.N.Y. June 15,2020 0; *United States v. Gregory,* 2020 WL 3036001 (N.D. Ill. June 5, 2020); *United States v. Eddings,* 2020 WL 261502(E.D. Cal. May 22, 2020); *United States v. Zubkov,* 2020 WL 2520696 (S.D.N.Y. May 18, 2020).

9

candidates. *See United States v. Caudle,* 740 F. App'x 364, 365 (4th Cir. 2018) (district court lacks authority to govern designation of prisoners under § 3624(c)(2))**.**

## V. APPOINTMENT OF COUNSEL

Defendant writes the Court to appoint him counsel to assist him with this request for a compassionate release. (Doc. No. 23). There is no general constitutional right to appointed counsel in post-conviction proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *United States v. Williamson,* 706 F.3d 405, 416 (4th Cir. 2013). The Court has discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the interests of justice so require. *See United States v. Legree,* 205 F.3d 724, 730 (4th Cir. 2000); *see also United States v. Reed,* 484 F.App'x 785, 785 (4th Cir. 2012); cf. 18 U.S.C. § 3006A (providing interests of justice standard for appointment of counsel in similar post-conviction proceedings).

As shown in this current motion, Defendant is capable of requesting compassionate release without the assistance of counsel and defendant has not otherwise established that the interests of justice require appointment of counsel in this circumstance at this time. The Court finds that the interests of justice do not require appointment of counsel to assist the Defendant at this time

## VI. SECOND CHANCE ACT

The Defendant also asks the Court to place him in home confinement under the Second Chance Act of 2007 which was reauthorized by Section 603 of the First Step Act of 2018. It is the responsibility of the Attorney General, through the Bureau of Prisons, to designate the place of incarceration, *United States v. Evans,* 159 F.3d 908, 912 (4th Cir. 1998) (authority to designate place of confinement vested in BOP), which is reflected in the language of the statute that "… the Attorney General, may release some or all eligible elderly offenders …to home detention…" 34

U.S.C. § 60541(g)(1)(A). Accordingly, the Court does not have authority to order the Defendant's release to home detention.

## VII. ORDER

**IT IS THEREFORE ORDERED** that:

(1) For these reasons, Defendant's *pro se* Motion for Compassionate Release and Reduction in Sentence and Home Confinement pursuant to 18 U.S.C. § 3582(c)(1)(A), the First Step Act of 2018, the CARES Act, and the Second Chance Act of 2007 (reauthorized by the First Step Act) (Doc. No. 22), is **DENIED**; and

(2) Defendant's *pro se* request for appointment of counsel (Doc. No. 23), is **DENIED**.

**SO ORDERED.**

Signed: September 4, 2020

Kenneth D. Bell
United States District Judge